UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| KAYLA L. SHRADER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:22CV20 HEA |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court for judicial review of the final decision of the Commissioner of Social Security denying the application of Plaintiff Kayla L. Shrader for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. The Court has reviewed the filings and the administrative record as a whole, which includes the hearing transcript and medical evidence. The decision of the Commissioner will be affirmed.

## Background

Plaintiff applied for disability benefits on July 6, 2020. Plaintiff alleges that she is disabled due to bipolar disorder, depression, attention deficit hyperactivity disorder (ADHD), post-traumatic stress disorder, migraines, and dyslexia. On June 8, 2021, a hearing was held in front of an Administrative Law Judge (ALJ). In an opinion issued on June 29, 2021, the ALJ determined that Plaintiff was not under a

disability at any time from her alleged onset date of June 8, 2020. The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. In his decision, the ALJ found Plaintiff had the severe impairments of migraine headaches, major depressive disorder, generalized anxiety disorder, social anxiety, learning disorder, and mild obstructive lung disease. However, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. While the ALJ found none of Plaintiff's impairments met or medically equaled a listed impairment, the ALJ did find some limitations. Specifically, the ALJ found Plaintiff retained the residual functional capacity (RFC) to perform light work, as defined in 20 CFR 404.1567(b) with the following limitations:

> …[Plaintiff] can never climb ladders, ropes, or scaffolds. She can have no exposure to whole body vibration, no concentrated exposure to pulmonary irritants, no exposure to dangerous unprotected heights or dangerous unprotected moving machinery, and no concentrated exposure to noise (due to migraines) meaning her maximum environmental noise level is limited to DOT/SCO code 3 moderate. She can do simple, routine tasks that can be performed independently and that involve working primarily with things. After any initial training period, social interaction must be occasional at Based on vocational expert testimony, the ALJ found Plaintiff could perform maximum, superficial in nature meaning no mediation, arbitration, negotiation, or confrontation of others or supervision of others, and limited to coworkers and supervisors. She can have no direct interaction with the general public. Changes in duties or work settings need to be the same changes daily.

The ALJ found that she could perform her past relevant work in housekeeping, which does not require the performance of work-related activities precluded by Plaintiff's RFC (20 CFR 404.1565), and other work, such as a laundry folder and small products assembler.

Plaintiff filed a timely Request for Review of Hearing Decision, and the Appeals Council denied the request for review. Plaintiff has exhausted all administrative remedies. The decision of the ALJ stands as the final decision of the Commissioner.

### **Hearing Testimony**

Plaintiff, who was born on November 20, 1992, was represented by counsel at her hearing before the ALJ. Plaintiff testified she completed high school and is married. She lives with her husband, who is not working now due to doctor orders, and her two children (ages four and six). She has Medicaid and child support income.

Plaintiff testified her most recent full-time job was June 8, 2020. She worked at Salt River Nursing Home as a housekeeper for approximately one year, but she quit due to her depression, anxiety and bi-weekly panic attacks. Her mother-in-law worked at the nursing home and helped her get the job. She had issues getting her job done because she would forget things and couldn't keep up with the expected pace. She cannot keep up with completing daily tasks because of her ADHD. She also had part-time jobs stocking supplies at businesses and cleaning.

Plaintiff testified she has received monthly treatment from Dr. Spalding since June 2020 and sees a counselor every two weeks to work on her depression and anxiety. Her depression affects her focus, like paying attention and getting her thoughts together. She goes through "crying spells" twice a week, usually when she thinks about the death of her grandparents. Her grandparents raised her, and she has strugled more with her depression since their deaths. When she gets angry, she usually isolates herself to work through it alone.

Plaintiff also had migraines three times a week, lasting anywhere from two to three hours to all day. She experiences light sensitivity, nausea, and occasional vomiting. However, since February, she testified her migraines were down to two or three a month and she takes medication for them. Plaintiff smokes and has some breathing problems, but testified she does not have any major issues with her physical health.

For medication, she takes Imitrex, Abilify, Singular, Buspar, Prilosec, Topamax, Trazodone, Estrace cream and has an inhaler. She takes her medications as prescribed and experiences side effects of slight nausea and itching, but testified she does not have "very bad side effects." She gets up around 6 in the morning. She goes to bed between 8:30 and 9:30 and is able to sleep through the night fifty percent of the time.

A Vocational Expert (VE) testified and found Plaintiff's past work in housekeeping and as a cashier. The ALJ posed the following hypothetical to the

4

VE: an younger individual with a 12th grade education and past work history, who is able to perform work with no exertional limitations, but cannot climb ladders, ropes or scaffolds; no whole-body vibration; no concentrated exposure to pulmonary irritants; no dangerous, unprotected heights or moving machinery; no concentrated exposure to noise; a maximum environmental noise level moderate at maximum (DTO SCO code 3); simple, routine tasks; working on tasks primarily with thing that can be performed independently; once any initial training period is over with, from that point onward, social interaction needs to be occasional at maximum, superficial in nature, meaning no mediation, arbitrations, negotiation, confrontation or supervision of others; social interaction limited to coworkers and supervisors only, and no direct interaction with the general public. The VE testified, consistent with the Dictionary of Occupational Titles (DOT), that person could perform Plaintiff's past work in housekeeping. The VE testified that person could also perform other jobs, like a laundry worker, a hand packager and a material handler. A second hypothetical posed, assuming the same facts as the first except the individual is able to perform work only at a light exertional level. The VE testified that individual could perform Plaintiff's past work in housekeeping, and also could perform jobs as a laundry folder and a small product assembler. The VE testified these jobs exist in significant number in the national economy. The VE also testified that the DOT does not address absenteeism and off-task behavior, but based on her experience, the worker could be absent from these jobs no more

5

than once a month, but not every month repetitively, and could be off task less than ten percent of the time.

## **Legal Standard**

To be eligible for benefits under the Social Security Act, Plaintiff must prove that [s]he is disabled. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual will be declared disabled "only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner engages in a five-step evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). At Step One, the ALJ determines whether the claimant is currently engaged in substantial gainful activity. At Step Two, the ALJ considers whether the claimant has a "severe" impairment or combination of impairments. At Step Three, the ALJ determines whether the severe impairment(s) meets or

6

medically equals the severity of a listed impairment; if so, the claimant is determined to be disabled, and if not, the ALJ's analysis proceeds to Step Four. At Step Four of the process, the ALJ must assess the claimant's residual functional capacity – that is, the most the claimant is able to do despite her physical and mental limitations, *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) – and determine whether the claimant is able to perform any past relevant work. *Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005) (RFC assessment occurs at the fourth step of process).

The claimant bears the burden through Step Four of the analysis. If [s]he meets this burden and shows that [s]he is unable to perform [her] past relevant work, the burden shifts to the Commissioner at Step Five to produce evidence demonstrating that the claimant has the RFC to perform other jobs in the national economy that exist in significant numbers and are consistent with [her] impairments and vocational factors such as age, education, and work experience. *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012).

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Jones*, 619 F.3d at 968. Additionally, the Court must consider evidence that supports the

7

Commissioner's decision as well as any evidence that fairly detracts from the decision. *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, the Court must affirm the Commissioner's decision; the Court may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *Id; See also, Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017).

**Residual Functional Capacity (RFC)**

A claimant's RFC is the most an individual can do despite the combined effects of all of his or her credible limitations. *See* 20 C.F.R. § 404.1545. An ALJ's RFC finding is based on all of the record evidence, including the claimant's testimony regarding symptoms and limitations, the claimant's medical treatment records, and the medical opinion evidence. *See Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010); 20 C.F.R. § 404.1545; Social Security Ruling (SSR) 96–8p.

## Decision of the ALJ

At Step One of the decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. At Step Two, the ALJ found that Plaintiff had the severe impairments of migraine headaches, major depressive disorder, generalized anxiety disorder, social anxiety, learning disorder, and mild obstructive lung disease. However, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals

8

the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. While the ALJ found none of Plaintiff's impairments met or medically equaled a listed impairment, the ALJ did find some limitations. Specifically, the ALJ found Plaintiff retained the RFC to perform light work, as defined in 20 CFR 404.1567(b), with the following limitations: Plaintiff can never climb ladders, ropes, or scaffolds. She can have no exposure to whole body vibration, no concentrated exposure to pulmonary irritants, no exposure to dangerous unprotected heights or dangerous unprotected moving machinery, and no concentrated exposure to noise (due to migraines) meaning her maximum environmental noise level is limited to DOT/SCO code 3 moderate. She can do simple, routine tasks that can be performed independently and that involve working primarily with things. After any initial training period, social interaction must be occasional at maximum, superficial in nature meaning no mediation, arbitration, negotiation, or confrontation of others or supervision of others, and limited to coworkers and supervisors. She can have no direct interaction with the general public. Changes in duties or work settings need to be the same changes daily.

At Step Four, the ALJ found Plaintiff could perform her past relevant work in housekeeping, which does not require the performance of work-related activities precluded by Plaintiff's RFC (20 CFR 404.1565).

9

The ALJ continued to Step Five in the alternative. At Step Five, based on VE testimony, the ALJ found that there are also other jobs that exist in significant number in the national economy that Plaintiff could perform, such as housekeeper, laundry folder, and small products assembler. Therefore, the ALJ found Plaintiff not disabled.

## Statement of the Issues

Generally, the issues in a Social Security case are whether the final decision of the Commissioner is consistent with the Social Security Act, regulations, and applicable case law, and whether the findings of fact are supported by substantial evidence on the record as a whole. The issue here is whether substantial evidence supports the ALJ's determination of Plaintiff's RFC and whether the ALJ properly considered medical opinion evidence and Plaintiff's subjective complaints.

## Discussion

The ALJ carefully detailed his findings through his discussion of Plaintiff's impairments. As described above, this Court's role is to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson*, 402 U.S. at 401; *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). So long as there is substantial evidence in the record that supports the decision, this Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary

outcome, or because the Court would have decided the case differently. *Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001).

**Whether the RFC is Supported by Substantial Evidence and Whether the ALJ Properly Considered Medical Opinion Evidence and Plaintiff's Subjective Complaints**

Plaintiff argues that the RFC finding is not supported by substantial evidence, and the ALJ did not properly consider Plaintiff's subjective complaints and the medical opinion evidence of Plaintiff's treating psychiatrist, Joseph Spalding, D.O.

"The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." *Hensley v. Colvin*, 829 F.3d 926, 931-32 (8th Cir. 2016) (citation omitted). "'Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace.' However, there is no requirement that an RFC finding be supported by a specific medical opinion." *Id.* at 932 (citation omitted). "[I]n evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively. Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Cox v. Astrue*, 495 F.3d 614, 619-20 (8th Cir. 2007) (citation omitted).

11

When evaluating medical opinion evidence, the ALJ will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinions, including those from Plaintiff's medical sources. *See* 20 C.F.R. § 404.1520c(a). Under the regulations, the ALJ focuses on the persuasiveness of each medical opinion using the five regulatory factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) any other relevant factors. *Id.* § 404.1520c(a)-(c). The most important factors the ALJ considers are supportability and consistency. *See Id.* § 404.1520c(b).

In *Polaski*, the Eighth Circuit held, in evaluating a claimant's subjective complaints and related functional limitations, the ALJ should consider: the absence of objective medical evidence; the claimant's prior work record; and observations by third parties (including treating and examining physicians) regarding such matters as (1) the claimant's daily activities; (2) the duration, frequency, and intensity of pain or other symptoms; (3) any precipitating and aggravating factor; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions. *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1984). The Eighth Circuit recognized "[t]he ALJ is in the best position to gauge the credibility of testimony and is granted deference in that regard." *See Estes*, 275 F.3d at 724. If the ALJ explicitly discredits a claimant's subjective complaints and gives good reasons, the Eighth Circuit has held it will defer to the ALJ's judgment, even if the ALJ does not cite to *Polaski* or discuss every factor in depth. *See*

12

*Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007); *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004).

The ALJ acknowledged Plaintiff's impairments and her complaints of pain, finding some restrictions were necessary. The ALJ discussed the overall medical record at length. However, after consideration of the record as a whole, the ALJ declined to find such limitations to warrant a finding of disability. For instance, the ALJ acknowledged that in July 2020, Plaintiff reported worsening migraine headaches, for which she was taking Excedrin Migraine. On physical examination, she was alert, in no acute distress, fully oriented, and had no gross neurological deficits. In August 2020 and May 2021, she reported still having migraines often, but they were not as bad. In February 2021, she reported having about two to three migraines per month (compared to her testimony about having them two to three times per week). The ALJ included a limitation in the RCF due to her migraines that she cannot have concentrated exposure to noise but concluded the medical evidence does not quantify migraine headaches occurring with any specified degree of frequency and does not support a finding she would be absent from work frequently either.

Regarding Plaintiff's mental impairments, the ALJ recognized that she sought treatment and reported excessive worry, restlessness, fatigue, difficulty concentrating, irritability, feeling sad most of the time, anger, overeating, poor sleep, and some audio and visual hallucinations. She said she did not like to go to

13

public places and did not leave the house often secondary to anxiety. However, in subsequent treatment records, the ALJ noted that she reported her medications were helping with her anxiety and it was becoming easier for her to "go out and about." She still had problems focusing, fluctuating moods and short-term memory loss, but the days she just wanted to stay in bed lessened since seeing her therapist. The ALJ acknowledged her provider assessed mild depression consistent with her depression screening questionnaires. The findings on mental status examination were generally mild and did not support the alleged loss of mental functioning. The ALJ reasoned that Plaintiff consistently demonstrated full affect, was cooperative, had clear speech, logical thought process, normal thought content with no reported hallucinations, normal insight, and judgment, and estimated average intelligence with impaired reading and writing. The ALJ pointed out that Plaintiff never needed inpatient psychiatric treatment, and her medications were stable except for a couple of dose increases. In fact, Plaintiff reported her medications and therapy were working well. The ALJ assessed that Plaintiff's mental health treatment has been generally routine with reported improvement in symptoms, and added the following limitations in the RFC: Any initial training period, social interaction must be occasional at maximum, superficial in nature meaning no mediation, arbitration, negotiation, or confrontation of others or supervision of others, and limited to coworkers and supervisors. Plaintiff can have no direct interaction with

14

the general public, and changes in duties or work settings need to be the same changes daily.

The ALJ addressed Plaintiff's learning disorder observing her education records show that she indicated a full-scale IQ score of 90 and that her cognitive ability was within one standard deviation from the mean, which indicates average ability, but she had a significant discrepancy between performance and ability. Her high school transcript shows generally passing, and with some good grades, and she was able to graduate.

The ALJ discussed Plaintiff's daily activities and hearing testimony. Plaintiff has two young children, ages four and six for whom cares, and she has a driver's license and is able to drive. Plaintiff reported that she could not "handle work and working at home at the same time," so she was seeking disability. At the hearing, Plaintiff testified that her last job ended because she "could not handle it with her mental problems" of depression and anxiety. She testified that she also has ADHD and did not get her duties done, was always behind everyone else, had trouble focusing, and could not meet expectations for maintaining pace. She said she has panic attacks twice per week that can last up to an hour and if she had one at the nursing home, she would go to the bathroom or go to her mother-in-law, and her supervisor would get onto her for that. She testified that her depression affects her socially, physically, and mentally. She cries bi-weekly and has issues dealing with the death of her grandparents. She stated that she has a bad temper but isolates

15

herself in these instances to deal with it alone. She said that she was in special education for almost all of her classes in high school, except for physical education and art. She has been seeing a psychiatrist every month since June 2020 and a counselor every two weeks. Regarding her physical impairment, she testified that she has migraines, which result in light sensitivity, nausea, and vomiting.

After this discussion, the ALJ considered the June 8, 2021, medical source statement by Dr. Spalding and found his assessment not persuasive. Plaintiff argues the ALJ erred in rejecting Dr. Spalding's opinion that Plaintiff is disabled.

Dr. Spalding indicated Plaintiff's moderate limitations in ability to understand, remember, and carry out simple instructions, marked limitations in ability to make judgments on simple, work-related decisions, and marked limitations in ability to understand, remember and carry out complex instructions and make judgments on complex work-related decisions. He indicated marked limitations in ability to interact with the public, supervisors, and coworkers, and extreme limitation in responding appropriately to usual work situations and changes in routine. He stated that her limitations were largely due to her learning disorder and severe anxiety. He noted that she has "lifelong" learning disability and was in special education "all her life." He indicated that she would be absent from work more than four days per month, would be off task twenty-five percent or more in a typical workday, and would need unscheduled breaks one to two days per week for one to two days due to panic attacks, crying spells, and anxiety.

16

Here, the ALJ appropriately evaluated Dr. Spalding's opinion as required under 20 C.F.R. § 404.1520c. First, the ALJ properly concluded that Dr. Spalding's assessment of marked to extreme limitations was unsupported by evidence, including the doctor's own treatment notes, showing that Plaintiff's mental symptoms remained stable—or even improved—with conservative treatment of medication. The ALJ explained there had been no abnormal mental status signs that would correspond with marked or extreme limitations. In addition, mental status signs have consistently been mild to normal.

Plaintiff objects to the ALJ's characterization of her mental health medications as being "commonplace and stable except for a couple of dose increases." However, the ALJ explained that Plaintiff's medications have been stable, which indicates her mental status has been stable, and Plaintiff herself reported improvement and no need for a change. Further, Plaintiff explains only two instances when her medication dosages increased, which is consistent with the ALJ's statement. The regulations allow the ALJ to consider Plaintiff's level of treatment and use of medication in evaluating her subjective complaints, which the ALJ appropriately did so here. *See* 20 C.F.R. § 404.1529(c)(3)(iv)-(v) (ALJ may consider medication and treatment); *Bernard v. Colvin*, 774 F.3d 482, 488 (8th Cir. 2014) (an impairment that is "controllable or amenable to treatment [does] not support a finding of total disability") (internal quotation omitted).

17

The ALJ also found there is no basis on the record for measuring absenteeism or being off task, as she makes all her medical appointments and there is no evidence of any shortcomings in her activities of daily living and caring for her young children. At the hearing, there was no allegation of her husband helping as he is currently under a doctor's care and unable to work. The ALJ determined Dr. Spalding's indication of a moderate limit in the ability to make judgments on simple work-related decisions is not consistent with the other evidence that Plaintiff cares for children, cleans her household, does laundry, prepares meals, leaves the house and drives alone, shops, plays with her phone, does crafts, and can count change and pay bills. Finally, the degree of marked limits he indicated, in interacting with the public, supervisors and co-workers, and the extreme limit he indicated in responding to usual work situations and changes in routine, are simply not consistent with the lack of any inpatient psychiatric hospitalizations, the lack of evidence that she was ever fired from any jobs, her admission that she walked away from any conflicts, and the other evidence of her daily activities. *See Wildman,* 596 F.3d at 969 (ALJ did not err by declining to include in RFC limitations based on claimant's allegations that he found not credible, or limitations from opinions he properly disregarded); *See also, Anderson v. Astrue,* 696 F.3d 790, 793 (8th Cir. 2012) ("[A]n ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by

better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.").

The ALJ properly considered the medical opinion evidence and applied the pain standard based on Plaintiff's subjective complaints. However, the ALJ's decision to discredit those complaints was in conjunction with the record as a whole, which the ALJ adequately explained with good reasons supported by substantial evidence. Further, all the relevant evidence supports the ALJ's RFC determination. The ALJ acknowledged Plaintiff's impairments, which warrant some work restrictions. Substantial evidence is not a high bar; it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." See *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). In explaining his findings, the ALJ need only "minimally articulate reasons for crediting or rejecting evidence of disability." *Strongson,* 361 F.3d at 1070 (citing *Ingram v. Chater*, 107 F.3d 598, 601 (8th Cir. 1997). He examined the entire record, and his opinion is substantially supported by the evidence before him.

## Conclusion

After careful review, the Court finds the ALJ's decision is supported by substantial evidence on the record as a whole. *Perkins v. Astrue,* 648 F.3d 892, 900 (8th Cir. 2011).

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED.**

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 20th day of March, 2023.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE